**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-02834-MSK-MJW

**IRENEUSZ (ERIC) ZASADA,**

        Plaintiff,

v.

**CITY OF ENGLEWOOD;
SOUTH METRO DRUG TASK FORCE;
SERGEANT KELLY MARTIN, in his individual capacity;
LIEUTENANT TOMMY BARRELLA, in his individual capacity; and
CHIEF TOM VANDERMEE, in his individual capacity,**

        Defendants.

**OPINION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

**THIS MATTER** comes before the Court on three Motions to Dismiss: (1) the Englewood Defendants'[1] Motion to Dismiss **(#62)**, to which Plaintiff Ireneusz (Eric) Zasada responded **(#71, 72)**, and the Englewood Defendants replied **(#77)**; (2) Defendant South Metro Drug Task Force's Motion to Dismiss **(#68)**, to which Mr. Zasada responded **(#75)**, and South Metro Drug Task Force replied **(#78)**; and (3) Douglas County Defendants'[2] Motion to Dismiss **(#63, 64)**, to which Mr. Zasada responded **(#73, 74)**, and the Defendants replied **(#76)**.[3]

---

[1] The Englewood Defendants include the City of Englewood (the City), Sergeant Kelly Martin, and Chief Tom Vandermee.

[2] The Douglas County Defendants originally included the Board of County Commissioners of Douglas County (BoCC), the Douglas County Sheriff's Office (DCSO), and Deputy Tommy Barrella. Claims against the BoCC and DCSO have since been dismissed, and those parties have been terminated. The motion is therefore denied as moot as to claims against the BoCC and DCSO. The motion remains at issue only as to claims against Defendant Barrella.

[3] Also pending before the Court is a Motion to Dismiss **(#20)** by the Douglas County Defendants. That motion is denied as moot. Upon the filing of the Second Amended Complaint

1

## I. Jurisdiction

The Court exercises jurisdiction over this matter under 28 U.S.C. § 1331.

## II. Background

The Second Amended Complaint **(#55)** generally alleges that, throughout his employment, Mr. Zasada "was treated differently because of his national origin, Polish." The allegations generally fall into two time periods. The first time period includes the entire span of Mr. Zasada's employment, up until he became a member of the South Metro Drug Task Force[4] (SMDTF) in 2010. The second time period comprises the time that Mr. Zasada served on the SMDTF. The facts as alleged in the Complaint are as follows.

Mr. Zasada, a native of Poland, was employed as a police officer by the City of Englewood (the City) for nearly eleven years until he was terminated in 2011. Throughout his employment, however, Mr. Zasada was denied training opportunities that similarly situated non-Polish officers received, such as training on bicycle patrol and for drug investigations, as well as "outside development training." Mr. Zasada was provided only mandatory training until he was finally offered Krav Maga (a form of self-defense) training in 2006. He frequently complained about the denial of other training, but was told it was because staffing was low.

In addition to the denial of training, Mr. Zasada was reprimanded for allegedly interfering with the training of Officer Kristina Weese, a Russian native. Mr. Zasada associated with Officer Weese because of their common Eastern European background, and Mr. Zasada was Officer Weese's instructor in Krav Maga. Officer Weese requested that Mr. Zasada give her

---

**(#55)**, the Douglas County Defendants filed a new motion to dismiss at docket number 63. All arguments made in the first motion to dismiss are included in subsequent motions.

[4] According to the Second Amended Complaint, the SMDTF is a "multi-jurisdictional organization of undercover police officers from Arapahoe, Douglas and Elbert counties handling drug apprehension and enforcement."

extra training when she was on "swing shifts," which he did.  The extra training was approved by the training coordinator.  Eventually, Mr. Zasada stopped the extra training because Officer Weese was put on the "graveyard shift."  Shortly thereafter, Commander Sam Watson ordered Mr. Zasada not to interact with Officer Weese.  He accused Mr. Zasada of having a sexual relationship with Officer Weese and of interfering with her training.  Mr. Zasada denied the allegations.

In January 2010, Mr. Zasada was assigned by the City to serve on the SMDTF.  As an undercover officer on the task force, Mr. Zasada investigated potential drug trafficking in the South Denver Metro area.  Defendant Lt. Tommy Barrella, a Douglas County employee, also served on the SMDTF and was above Mr. Zasada in the chain of command.  According to the Complaint, Lt. Barrella frequently made derogatory comments to, or in the presence of, Mr. Zasada about "Pollocks."  When Lt. Barrella first learned that he was from Poland, he "immediately made a derogatory comment" to Mr. Zasada about "Pollocks" in the presence of other officers.  A few weeks later, Lt. Barrella again made derogatory comments about "Pollocks."  In May 2010, an incident occurred where Lt. Barrella remarked to Mr. Zasada, "In Poland, Pollocks don't pick up swat team members and give them a ride."  That comment was made in reference to Mr. Zasada's apparent unwillingness to provide the SWAT team members transportation to a debriefing location.  Later, when Mr. Zasada arrived at the debriefing location, he found Lt. Barrella standing with other agents and making remarks about "Pollocks not giving rides."  Mr. Zasada eventually stopped speaking to Lt. Barrella.  Through September 2010, Lt. Barrella continued to call Mr. Zasada a "Pollock."

Mr. Zasada complained several times about Lt. Barrella's comments to his supervisor at the City, Defendant Sgt. Kelly Martin, but no action was taken.  Mr. Zasada confronted Lt.

Barrella and told him that his comments were offensive, but the conduct did not stop. After complaining about Lt. Barrella's conduct, he became the subject of an internal investigation that Sgt. Martin was in charge of.

In November 2010, Lt. Barrella allegedly advised Sgt. Martin that it was not working out with Mr. Zasada on the SMDTF. Lt. Barrella indicated that Mr. Zasada did not get along with other agents and that he was inappropriately conducting surveillance on his own. Without further investigation, Sgt. Martin recommended that Mr. Zasada be removed from the SMDTF. A few days later, Defendant Chief Tom Vandermee carried out the recommendation. Mr. Zasada was reassigned to a job in "Records" where he would be on light duty and perform primarily desk work. Chief Vandermee also advised Mr. Zasada that he was being investigated for "truthfulness" and "insubordination." Mr. Zasada objected to the assignment to Records, at which point he was permitted to remain on patrol for the City. Chief Vandermee warned him, however, that if he heard any "negative comments" from him, he would be assigned to Records.

After filing a grievance about the removal, Mr. Zasada became the subject of another internal investigation, this time for "unbecoming conduct," "abuse of department equipment," and "harassment/discrimination." Mr. Zasada tried to contact the City Manager about the treatment he was experiencing, but he was not permitted to do so by Chief Vandermee. Mr. Zasada did not complain to the City's Human Resources representative, allegedly out of fear of retaliation. In March 2011, after the second internal investigation was complete, Mr. Zasada was terminated by Chief Vandermee. He was advised by letter that he was being terminated for his overtime hours and improper surveillance. Mr. Zasada asserts, however, that he never received adequate training on SMDTF surveillance policies, and that he did not receive the "same amount of practical training as similarly situated non-Polish officers."

Based on these events, Mr. Zasada asserts claims against the City for national origin discrimination, hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). He also asserts claims against the City, the SMDTF, and Defendants Martin, Barrella, and Vandermee under 42 U.S.C. § 1983 for violation of his Equal Protection rights under the United States Constitution.

Collectively, the Defendants move to dismiss several of Mr. Zasada's claims under Fed. R. Civ. P. 12(b)(6). The City seeks to dismiss Mr. Zasada's claim of hostile work environment. It also seeks to limit the claim of national origin discrimination to a theory of disparate treatment when Mr. Zasada was terminated. The City does not move to dismiss the retaliation claim. All of the Defendants move to dismiss Mr. Zasada's § 1983 claims.

### III. Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled allegations in the Second Amended Complaint **(#55)** as true and view those allegations in the light most favorable to Mr. Zasada. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint and the accuracy of which is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50. The Court takes the remaining, well-pled factual contentions as true and ascertains whether those facts, coupled with the law establishing the elements of the claim, support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* at 1950-51. What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### IV. Analysis

#### A. Hostile Work Environment

Mr. Zasada alleges that while he served on the SMDTF, he was "subject to severe and pervasive harassment such that it altered the conditions of his work environment," in violation of 42 U.S.C. 2000e-2(a)(1).

Title VII's prohibition of employment discrimination includes an employee's claim of a hostile work environment based on race or national origin. *Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). Hostile environment harassment occurs where a supervisor or co-worker's conduct unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). To state a claim of a hostile work environment, a plaintiff must allege that the conduct to which he or she was subject was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that he or she subjectively perceived the environment to be abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Whether a work environment is hostile must be evaluated based on all the

circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1269 (10th Cir. 1998).

First, the City seeks to dismiss this claim on the basis that Mr. Zasada fails to allege facts that would establish that he was subjected to an objectively hostile work environment.

The Complaint alleges that at least three specific incidents occurred where Lt. Barrella used the work "Pollock" in reference to, or in the presence of, Mr. Zasada. The Complaint further alleges that Lt. Barrella continued to use the word over the course of several months, and that the conduct did not stop after Mr. Zasada confronted him about it. Based on the allegations in the Complaint, the word "Pollock" was used in a derogatory manner, rather than to simply identify Mr. Zasada as being Polish.

Taking these allegations as true, the Court finds that Mr. Zasada's claim of a hostile work environment is sufficiently plausible to survive a motion to dismiss. Whether the conduct that Mr. Zasada was subjected to was severe and pervasive enough to create an objectively hostile work environment is a factual issue that requires further development on the record. At the pleading stage, however, the Court is not prepared to conclude that Mr. Zasada's allegations do not constitute an objectively hostile work environment as a matter of law.

Next, the City argues that the claim must be dismissed because Mr. Zasada admits that he did not report the harassment to the City's Human Resources representative. Because Mr. Zasada did not follow the City's harassment-reporting policy, the City argues that it cannot be imputed with knowledge of the harassment.

The Court rejects this argument. The alleged harasser in this case is Lt. Barrella, who was not an employee of the City at the time of the alleged harassment. In *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1074 (10th Cir. 1998), the Tenth Circuit held that under certain circumstances, an employer may be held liable under a negligence theory for the third-party harassment of its employees.[5] Under negligence liability, an employer may be held liable if it "knew or should have known about the conduct and failed to stop it." *Bertsch v. Overstock.com*, 684 F.3d 1023, 1027 (10th Cir. 2012). As to the notice requirement, actual notice is established where the plaintiff has reported harassment to a management-level employee. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998). Thus, to the extent Mr. Zasada failed to report the conduct to the proper Human Resources representative, the failure does not necessarily preclude a finding that the City was on notice of the harassment. Mr. Zasada alleges that he repeatedly complained of Lt. Barrella's conduct to Sgt. Martin, who was his supervisor at the City. Thus, at this early point in the case, the Court finds that Mr. Zasada has sufficiently alleged that the City was on notice of the harassment. Accordingly, the City's Motion to Dismiss as to Mr. Zasada's claim of hostile work environment is DENIED.

### B. National Origin Discrimination

Next, Mr. Zasada asserts that he was subjected to disparate treatment because of his national origin, in violation of 42 U.S.C. § 2000e-2(a)(1), when he was terminated from

---

[5] *Lockard* occurred in the context of a sexually hostile work environment created by the employer's customers. The Court finds that the holding in *Lockard* is applicable in the case of racial or national harassment by a third-party. Other courts have applied *Lockard* in this manner. *See, e.g., Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005); *see also* 29 C.F.R. § 1606.8(e).

employment, removed from the SMDTF, denied training opportunities and not provided sufficient training, and targeted for an internal investigation.[6]

To plead a claim of disparate treatment under 42 U.S.C. § 2000e-2(a)(1), a plaintiff must allege that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007). Although an employment discrimination plaintiff need not plead a *prima facie* case of discrimination to survive a Rule 12(b)(6) motion to dismiss, *see Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), he or she must still allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

As noted, the City does not move to dismiss this claim. Instead, the City seeks to limit the claim to a theory of discrimination to the termination of Mr. Zasada's employment. The City argues that, except for termination, Mr. Zasada does not allege that he suffered an "adverse employment action."

The Court has some question about the dismissal of "theories". But assuming that a theory can be dismissed due to inadequate pleading, the Court declines to do here. Whether an employer's decision constitutes an adverse action often is fact driven[7] requiring development of

---

[6] As the City correctly points out, the Complaint fails to specifically enumerate Mr. Zasada's removal from the SMDTF as an adverse employment action. However, the Court finds that the factual allegations are sufficient to put the City on notice that Mr. Zasada intended to include the removal as a basis for his discrimination claim. Moreover, the City has not shown that it was prejudiced by the failure, and indeed, the Court could simply permit Mr. Zasada to amend his Complaint. Instead, the Court will interpret the Complaint as alleging that Mr. Zasada was discriminated against when he was removed from the SMDTF.

[7] An adverse employment action is one that inflicts "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004). However, a "mere inconvenience or an alteration of job

facts pretrial investigation. As at least one adverse action has been pled, the claim will not be dismissed.

## C. 42 U.S.C. § 1983

Finally, Mr. Zasada asserts claims under 42 U.S.C. § 1983 against Defendants Barrella, Martin, and Vandermee, the City, and the SMDTF, for violation of his right to equal protection under the law.

Section 1983 creates no substantive rights, but instead offers a remedy for those who have been denied rights secured by federal statutory or constitutional law by someone who acts under color of law. 42 U.S.C. § 1983; *Ramirez v. Dept. of Corrections, Colo.*, 222 F.3d 1238, 1243 (10th Cir. 2000). The Equal Protection Clause of the United States Constitution mandates that no state "deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Different types of equal protection claims call for different forms of review, but in each instance, "to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998). Racial and national origin discrimination can violate the Fourteenth Amendment right to equal protection of the law and state a cause of action under section 1983. *Ramirez*, 222 F.3d at 1243.

### 1. Claims against Individual Defendants

Mr. Zasada asserts that Defendants Barrella, Martin, and Vandermee violated his right to equal protection by "depriving [him] of equal treatment on the basis of his national origin." He

---

responsibilities" is not considered an adverse employment action. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998).

10

alleges that he was deprived equal treatment when he was harassed because of his national origin, removed from the SMDTF, singled out and targeted for investigation, and terminated "without implementing corrective measures based on disparate application of Defendants' work rules or policy based on his national origin and/or because of his association with other employees of Eastern European descent."

### *a. Defendant Barrella*

Defendant Barrella argues that the claim must be dismissed because Mr. Zasada failed to allege that his conduct was sufficiently severe to rise to the level of a constitutional violation. As noted above, however, Mr. Zasada has sufficiently alleged a hostile work environment claim based on Defendant Barrella's conduct. Thus, the § 1983 claim against Defendant Barrella cannot be dismissed on that ground.

Defendant Barrella also argues that Mr. Zasada fails to state a claim because he does not allege that he was Mr. Zasada's employer, and therefore he was not acting under color of law within the meaning of § 1983.

Contrary to Defendant Barrella's view, Mr. Zasada is not required to allege that Defendant Barrella was his supervisor. To satisfy the "color of law" requirement, the defendant must exercise some governmental authority over the plaintiff. *Johnson v. Martin*, 195 F.3d 1208, 1217 (10th Cir. 1999). Here, Mr. Zasada has alleged that Defendant Barrella served with him on the SMDTF and was higher in the chain of command. He further alleges that Defendant Barrella was promoted to Commander of the Task Force. Accepting these allegations as true, the Court finds that Mr. Zasada has sufficiently pled that Defendant Barrella was in a position of authority over him at the time the alleged offensive conduct occurred. Accordingly, Defendant Barrella's Motion to Dismiss is DENIED.

*b. Defendants Martin and Vandermee*

Defendants Martin and Vandermee seek dismissal based on qualified immunity. Government officials are entitled to qualified immunity from liability for civil damages when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Once the Defendants raise the defense of qualified immunity in the context of a motion to dismiss, the Court must determine whether the Plaintiff, taking his allegations in the light most favorable to him, has adequately asserted a violation of federal law. *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001); *see also Ramirez v. Dept. of Corrections*, 222 F.3d 1238, 1244 (10th Cir. 2000). A court does not apply a heightened pleading standard with respect to a defendant's assertion of a qualified immunity defense, but rather, reviews the Complaint under the traditional standards applicable to a motion to dismiss.

Defendants Martin and Vandermee argue that Mr. Zasada fails to state an equal protection violation because he fails to allege sufficient facts that, if true, would establish that Mr. Zasada was treated differently from other employees. The Defendants contends that Mr. Zasada is required to plead facts about specific individuals who were treated differently than he was treated.

The Court finds that the allegations in the Complaint are sufficient to state an equal protection violation. The Complaint alleges that the Defendants treated Mr. Zasada differently from other similarly situated non-Polish officers. Although the Complaint does not list specific

12

individuals, the allegations imply that Mr. Zasada, as a Polish officer, was treated differently from every similarly situated officer who was not Polish.

Next, the Court must consider whether the rights allegedly violated were "clearly established" at the time of the Defendants' conduct. A right is "clearly established" when its confines are sufficiently definite that a reasonable individual in similar circumstances would recognize that his actions violated Mr. Zasada's conditional rights. *Harlow*, 457 U.S. at 818. Typically, a right is considered "clearly established" if that right has been recognized by a court of binding authority in the particularized circumstances presented by the case. *See, e.g., Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004). At the time of the conduct here, the Tenth Circuit had previously held that national origin discrimination can violate the Fourteenth Amendment right to equal protection of the law and state a cause of action under § 1983. *Ramirez*, 222 F.3d at 1243. Thus, the Court finds that the rights invoked by Mr. Zasada were clearly established at the time of the conduct, and the Defendants are not entitled to qualified immunity.

The City's Motion to Dismiss is DENIED as to § 1983 claims against Defendants Martin and Vandermee.

### 2. Claims against the City and the SMDTF

The Complaint alleges that the City and the SMDTF had discriminatory customs or policies of failing to train employees with regard to its harassment and discrimination policies, permitting employees to harass other employees of their Eastern European decent, permitting retaliation against employees who complained about discrimination and harassment, and failing to correct the discriminatory policies.

13

The City seeks to dismiss the claim against it, arguing that the Complaint fails to allege sufficient facts that, if true, would establish that Mr. Zasada was treated differently from other employees. The City presents the same argument that Defendants Martin and Vandermee presented in connection with their defense of qualified immunity. As discussed above, the Court finds that the Complaint sufficiently alleges that Mr. Zasada was treated differently from other non-Polish officers. Thus, dismissal of the § 1983 claim against the City is inappropriate, and the Motion to Dismiss that claim is DENIED.

The SMDTF, on the other hand, seeks to dismiss the claim for two reasons. First, it argues that the claim must be dismissed on jurisdictional grounds because it is not an "unincorporated association" amenable to suit. Alternatively, the SMDTF argues that Mr. Zasada fails to state a claim against it because, as an unincorporated association, it is not a "person" within the meaning of 42 U.S.C. § 1983.

On this point, the Complaint alleges that the SMDTF is a "multi-jurisdictional organization of undercover police officers from Arapahoe, Douglas and Elbert counties," and that it constitutes an "unincorporated association which is amenable to suit under federal law pursuant to Fed. R. Civ. P. 17(b)(3)(A)."

The SMDTF disputes that it is an "unincorporated association" amenable to suit as alleged by Mr. Zasada. Putting aside that dispute and accepting as true Mr. Zasada's allegation that the SMDTF is an unincorporated association within the meaning of Rule 17, the Court nevertheless concludes that his claim against the SMDTF must be dismissed.

In relevant part, section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

14

>       privileges, or immunities secured by the Constitution and laws,
>       shall be liable to the party injured in an action at law, suit in equity,
>       or other proper proceeding for redress . . . .

Rule 17(b) governs how the capacity to sue or be sued is to be determined.  Subsection (3)(A) provides that "a partnership or other unincorporated association with no such capacity under [the law of the state where the court is located] may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws . . . ."[8]

In *Lippoldt v. Cole*, 468 F.3d 1204, 1213 (10th Cir. 2006), the Tenth Circuit held that unincorporated associations are not subject to suit under § 1983.  There, an unincorporated association, Operation Save America (OSA), consisting of volunteer who oppose abortion, brought constitutional claims against city officials for denial of parade permits.  On appeal, the defendants asserted that OSA, as an unincorporated association, was not a "person" capable of bringing suit under § 1983.  The Tenth Circuit concluded that in both the context of bringing suit and being subject to liability, there was no congressional intent to include unincorporated associates within the ambit of the term "person" as set forth in § 1983.  It therefore reversed the district court's ruling that an unincorporated association was a "person" entitled to bring a claim under section 1983.  Accordingly, the Court finds that the SMDTF, as an unincorporated association, is not a "person" within the meaning of § 1983 and is not subject to suit.  The Court therefore concludes that Mr. Zasada has failed to state a claim for which relief can be granted against the SMDTF.  The SMDTF's Motion to Dismiss is GRANTED and the claim against it is DISMISSED.

---

[8] The term "unincorporated association" is not defined in the Federal Rules, but the Supreme Court has defined an unincorporated association as "a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise."

15

### V. Conclusion

For the forgoing reasons, the Court rules as follows:

- The Englewood Defendants' Motion to Dismiss **(#62)** is **DENIED**.

- The South Metro Drug Task Force's Motion to Dismiss **(#68)** is **GRANTED**. Claims against it are **DISMISSED**, with prejudice. All further pleadings shall omit reference to the South Metro Drug Task Force as a party to this action.

- The Douglas County Defendants' Motion to Dismiss **(#63)** is **DENIED**.

- The previously-filed Motion to Dismiss **(#20)** by the Douglas County Defendants is **DENIED AS MOOT**.

Dated this 29th day of March, 2013.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge