IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 11-cv-02834-MSK-MJW

IRENEUSZ (ERIC) ZASADA,

        Plaintiff,

v.

CITY OF ENGLEWOOD;
SERGEANT KELLY MARTIN;
LIEUTENANT TOMMY BARRELLA; and
CHIEF TOM VANDERMEE,

        Defendants.

---

**OPINION AND ORDER ON
MOTIONS FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on two motions for summary judgment: (1) a

Motion for Summary Judgment (**#102**) filed by the Defendant Lieutenant Tommy Barrella,[1] to

which the Plaintiff Ireneusz (Eric) Zasada responded (**#105**), and Lt. Barrella replied (**#113**); and

(2) a Motion for Summary Judgment (**#104**) filed by the Defendants the City of Englewood,

Sergeant Kelly Martin, and Chief Tom Vandermee, to which Mr. Zasada responded (**#115**), and

the Defendants replied (**#128**).[2]  The Court considers the motions together.

**I.  Jurisdiction**

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1] This motion was filed by the "Douglas County Defendants," which previously included the
Board of County Commissioners of Douglas County (BoCC), the Douglas County Sheriff's
Office (DCSO), and Defendant Lt. Barrella.  However, claims against the BoCC and DCSO have
since been voluntarily dismissed (#110).  The Court therefore considers the motion only as to
claims against Defendant Barrella.

[2] Also pending before the Court is a Motion for Summary Judgment (**#103**) by the South Metro
Drug Task Force (SMDTF).  However, all claims against the SMDTF have been dismissed
(#110, 129).  Its motion for summary judgment is therefore moot, and it is denied for that reason.

## II.  Material Facts

Having reviewed the record and the submissions of the parties, the underlying facts pertinent to the motion are as follows.  The Court will elaborate as necessary in its analysis.

Mr. Zasada, a native of Poland, is a former employee of the Defendant City of Englewood ("the City").  He was hired as a police officer for the City by the Defendant Chief Tom Vandermee.  Mr. Zasada's direct supervisor at the City was Defendant Sgt. Kelly Martin.

On January 1, 2010, Chief Vandermee assigned Mr. Zasada to serve on the South Metro Drug Task Force ("SMDTF").  The SMDTF is a cooperative task force comprised of officers from numerous law enforcement agencies throughout the Denver metro area.  Each law enforcement agency that belongs to the SMDTF assigns officers to work as agents for the SMDTF.  The officers assigned to the task force work undercover to investigate drug-related crimes.  During their assignment, the officers on the task force remain employed by, and report to, their "home" agency.  Mr. Zasada's direct supervisor on the SMDTF was Sgt. Jason Anderson, a Douglas County officer.  He was also under the supervision of the Commander of the SMDTF.

In August 2010, Defendant Lt. Tommy Barrella, a Douglas County Sheriff's Deputy, became the Commander of the SMDTF.  Mr. Zasada had met Lt. Barrella a few times before he became Commander of the SMDTF.  Their first meeting was in February 2010, when the two were at a Doulas County Sheriff's Department substation.  Lt. Barrella inquired about where Mr. Zasada was from.  Mr. Zasada alleges that when he said he was from Poland, Lt. Barrella immediately started making comments about "Polacks."  Mr. Zasada recalls a second meeting at the substation, where again, Lt. Barrella made comments to him about "Polacks."  In May 2010, Mr. Zasada encountered Lt. Barrella a third time at a multi-jurisdictional training event.  As the

two were leaving the training event, Lt. Barrella asked Mr. Zasada would give a ride to some other officers that were there.  When Mr. Zasada asked if he was serious, Lt. Barrella said something to the effect of, "well, what, Polacks in Poland don't give [rides] to their SWAT team members?"  Mr. Zasada alleges that after Lt. Barrella became Commander of the SMDTF, he continued to make comments and jokes about "Polacks."

In September 2010, Mr. Zasada complained to Sgt. Martin about Lt. Barrella's behavior. Sgt. Martin instructed Mr. Zasada to discuss the problem with Lt. Barrella.  Mr. Zasada confronted Lt. Barrella, but the conduct did not stop.  Sgt. Martin did not contact Lt. Barrella about the situation or investigate further.

In October 2010, concerns were raised about the legitimacy of Mr. Zasada's overtime submissions.  The City had conducted a routine review of pay slips, including overtime, and it was discovered that Mr. Zasada had worked a large amount of overtime in a two week period. Many of Mr. Zasada's overtime slips indicated that he had been conducting "surveillance."  Sgt. Martin was asked to look into the matter.  Sgt. Martin contacted Lt. Barrella and Sgt. Anderson to discuss the issue.  Sgt. Anderson reported that the overtime had not been authorized, and that he could not think of a good reason why the overtime would have been incurred.  Lt. Barrella also raised concerns about Mr. Zasada's performance on the task force and his ability to get along with the other agents.  In a subsequent conversation, Lt. Barrella told Sgt. Martin that Mr. Zasada was not a good fit for the task force and he was not working out.  Lt. Barrella recommended that Mr. Zasada be reassigned.

In November 2010, Sgt. Martin reported to Chief Vandermee about his concerns with Mr. Zasada's overtime slips.  He also reported that there were concerns about Mr. Zasada violating a directive not to interfere with Officer Kristina Weese's training and about Mr. Zasada's

performance on the SMDTF.  Sgt. Martin recommended to Chief Vandermee that Mr. Zasada be removed from the SMDTF.  On Sgt. Martin's recommendation, and because assignment to the SMDTF was discretionary, Chief Vandermee decided to remove Mr. Zasada from the task force and return him to his position as a police officer for the City.  On November 29, 2010, Chief Vandermee met with Mr. Zasada and told him he was no longer assigned to the SMDTF.  He also informed Mr. Zasada that the City would be conducting a formal internal affairs investigation into his overtime submissions.  Chief Vandermee asked Sgt. Martin to conduct the investigation.

Over the course of his investigation, Sgt. Martin discovered that Mr. Zasada had allegedly committed numerous Class A violations, including failing to get authorization for overtime work, using his government issued cell phone to send sexually-explicit photographs to Officer Weese, failing to follow a directive to turn in his undercover identification, and disobeying the directive not to interfere with Officer Weese's training.

Sgt. Martin prepared an investigation report, concluding that Mr. Zasada was guilty of insubordination, conduct unbecoming an officer, and untruthfulness.  He also concluded that Mr. Zasada had violated the City's Harassment Reporting Policy, which prohibits sexually "implicit or explicit communications."  The report was reviewed three Deputy Chiefs, each of whom recommended to Chief Vandermee that Mr. Zasada be terminated.

Chief Vandermee reviewed Sgt. Martin's investigation file and report, as well as the Command Staff recommendations.  He determined that Mr. Zasada had engaged in serious misconduct.  As a result of that misconduct, and due to his disciplinary history, Chief Vandermee decided that Mr. Zasada should be terminated.  Chief Vandermee met with Mr. Zasada on March 4, 2011 and notified him of his termination.

Shortly thereafter, Mr. Zasada filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  After the EEOC investigation, Mr. Zasada received a right to sue letter and commenced this action.

As narrowed by earlier proceedings, Mr. Zasada asserts claims against the City for national origin discrimination, hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a).  He also asserts claims under 42 U.S.C. § 1983 against the City, and Defendants Chief Vandermee, Sgt. Martin, and Lt. Barrella for violation of his right to equal protection under the Fourteenth Amendment of the United States Constitution.

The Defendants move for summary judgment in their favor on all claims.

### III.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## IV.  Analysis

### A.  Claims against the City

Mr. Zasada asserts claims against the City for national origin discrimination, hostile work environment, and retaliation in violation of Title VII, and a claim under 42 U.S.C. § 1983 for violation of his right to equal protection under the Fourteenth Amendment.  The City moves for summary judgment on all claims.

1. National Origin Discrimination

Mr. Zasada alleges that he was subjected to disparate treatment because of his national origin when the City's decided to remove him from the SMDTF, conduct an internal investigation, and terminate his employment.

Title VII makes it unlawful to discharge or discriminate against an individual based on national origin.  42 U.S.C. § 2000e-2(a).  Where, as here, there is no direct evidence of discrimination, the Court applies the burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, Mr. Zasada must first make out a *prima facie* case of discrimination.  To establish a *prima facie* case of national origin discrimination, Mr. Zasada must show that (1) he belongs to a protected class, (2) he suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination.  *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).  If Mr. Zasada establishes his *prima facie* case, the burden shifts to the City to provide a legitimate, nondiscriminatory reason for its employment decisions.  If the City comes forward with a nondiscriminatory reason for its actions, the burden reverts back to Mr. Zasada to establish that the City's proffered reason for the challenged action is pretextual, and that the real reason was discriminatory.

As an initial matter, the City contends that the internal affairs investigation does not constitute an adverse action.  But, the City admits that Mr. Zasada can establish that he suffered an adverse action when he was removed from the SMDTF and when he was terminated.  Because the City concedes that Mr. Zasada can establish at least one adverse employment action, his burden on that element is satisfied.  It is therefore unnecessary for the Court to consider whether the internal affairs investigation, as distinct from the SMDTF reassignment and Mr.

Zasada's termination, constitutes a separately-actionable adverse employment action.  Because a trial is required on the remaining claims, and the evidence relating to the internal affairs investigation will nevertheless be offered at trial to establish the grounds for Mr. Zasada's subsequent termination, it is more expeditious and economical to address the sufficiency of the investigation as an adverse action in the context of a motion under Fed. R. Civ. P. 50.  *See In re Ribozyme Pharmaceuticals, Inc.*, 209 F.Supp.2d 1106, 1112 n.18 (D.Colo. 2002).

For purposes of this motion, the Court assumes that Mr. Zasada could establish his *prima facie* case of national origin discrimination at trial.  Thus, the burden shifts to the City to proffer a legitimate, non-discriminatory reason for its actions.

The City asserts that Chief Vandermee removed Mr. Zasada from the SMDTF and initiated an investigation because of concerns about his overtime slips and about his performance on the SMDTF.  The City asserts that Mr. Zasada was terminated because Chief Vandermee believed that he had engaged in serious misconduct.  Because the City has offered legitimate non-discriminatory reasons for its actions against Mr. Zasada, the burden shifts back to Mr. Zasada to show why the stated reasons are pretext.

The City argues that judgment must enter in its favor because Mr. Zasada cannot prove that the City's proffered reasons for its employment decisions are pretext for discrimination.  A plaintiff shows pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence," and therefore infer that the employer's actions were not for the reasons given.  *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005) (quotation omitted).  One typical method for a plaintiff to prove pretext is by providing direct evidence that the defendant's stated reason for the adverse employment action

was false. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). Another common method is a differential treatment argument, in which the plaintiff demonstrates that he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness, showing that the employer failed to follow typical company practice in its treatment of the plaintiff. *Id.* However, evidence of pretext may also take a variety of other forms. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007).

When evaluating pretext, the Court is mindful that it must look at the facts as they appeared to the person making the employment decision. *Kendrick*, 220 F.3d at 1231. Here, it is undisputed that Chief Vandermee was the person who made the employment decisions with regard to Mr. Zasada. The relevant inquiry is not whether Chief Vandermee's proffered reasons were wise, fair, or correct, but rather whether he subjectively believed those reasons to be true and acted in good faith on those beliefs. *See Rivera v. City and Cnty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004). "Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." *Piercy*, 480 F.3d at 1200.

Here, Mr. Zasada asserts a "cat's paw" or "rubber stamp" theory to demonstrate pretext. "Cat's paw" refers to a situation in which "a biased subordinate, who lacks decision making power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006). The "rubber stamp" doctrine refers to a situation where "a decisionmaker gives perfunctory approval for an adverse employment action explicitly recommended by a biased subordinate." *Id.* To survive summary judgment on a subordinate bias theory, a plaintiff must first establish a genuine issue of material fact concerning the bias of

the subordinate.  A plaintiff must then demonstrate a causal connection between the subordinate's actions and the employment decision.  In other words, a plaintiff must show that the biased subordinate's discriminatory reports, recommendation, or other actions caused the decisionmaker to take the adverse employment action.  *Id.*

Mr. Zasada argues that although Chief Vandermee may not have harbored bias, he relied on the biased recommendations of Sgt. Martin and Lt. Barrella that he be removed from the task force.  Mr. Zasada has presented sufficient evidence to establish a genuine dispute of fact as to whether Lt. Barrella was biased against him because of his Polish origin.  The record shows that Lt. Barrella used the word "Polack" in front of Mr. Zasada and that he made jokes about "Polacks."  Further, the record shows that Sgt. Martin, in recommending that Mr. Zasada be removed from the task force, considered Lt. Barrella's concerns about Mr. Zasada's performance on the task force and his opinion that Mr. Zasada was not working out.  Based on this evidence, a reasonable jury could conclude that Lt. Barrella's recommendations and opinions were a proximate cause of Mr. Zasada being removed from the task force.  *See Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1192 (2011).

Accordingly, the Court finds that Mr. Zasada has come forward with sufficient evidence to establish at least one theory of national origin discrimination.  Summary judgment on this claim is inappropriate, and a trial is required.

### 2.  Hostile Work Environment

Next, Mr. Zasada claims that the City is liable for the hostile work environment allegedly created by Lt. Barrella because the City either knew, or should have known, about the harassment and failed to stop it.

Title VII forbids employment discrimination on the basis of national origin.  This includes an employer's creation of a hostile work environment based on national origin.  *Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 680 (10th Cir. 2007).  To survive a motion for summary judgment on a claim for hostile work environment Mr. Zasada must show that a rational jury could find that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment," and that he was "targeted for harassment" because of his national origin.  *Id.*

The City moves for summary judgment on this claim, arguing that Mr. Zasada cannot demonstrate that he was subjected to a hostile work environment.

There is no "mathematically precise test" for determining whether the conduct is sufficiently severe or pervasive.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).  Some factors to be weighed include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* at 23.  A plaintiff does not make a showing of a pervasively hostile work environment "by demonstrating a few isolated incidents" of hostility or sporadic racial slurs.  Instead, "there must be a steady barrage of opprobrious [discriminatory] comments."  *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005).  However, because frequency is merely one factor in the analysis, an isolated incident may suffice if the conduct is severe and threatening.  *See Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir. 2001).

Mr. Zasada has presented evidence of at least four incidents where Lt. Barrella used the word "Polack" in a derogatory manner towards him.  Each time Mr. Zasada encountered Lt.

Barrella from February 2010 until he became Commander, Lt. Barrella made comments and jokes about "Polacks." (The Court notes that, with the exception of the comment about "Polacks not giving rides," Mr. Zasada has not articulated the specific contents of any comment allegedly made by Mr. Barella. Mr. Zasada testified only in general terms that such comments used the word "Polack.") Lt. Barrella's conduct continued after he became Commander of the task force. Mr. Zasada testified that Lt. Barrella would often make these comments and jokes in front of other officers and in a loud voice. Mr. Zasada stated that he felt embarrassed and upset each time it happened.

Viewing the evidence in the light most favorable to Mr. Zasada, the Court finds that he has presented sufficient evidence to create a genuine dispute of material fact as to whether Lt. Barrella's conduct was sufficiently severe or pervasive to create a hostile work environment. Mr. Zasada has identified only a handful of comments by Lt. Barrella involving the ethnic epithet "Polack," occurring over a time period of many months. Mr. Zasada has failed to offer much evidence of the context of these remarks – for example, whether they were uttered by Mr. Barrella in a tone of aggression (*e.g.* "fucking Polacks"), derision ("stupid Polacks"), or simply insensitive or crude joking ("you Polack"). Taken alone, the Court has some doubt as to whether the few instances of undifferentiated use of a derogatory, but not particularly stinging, epithet would be sufficient to constitute a hostile working environment. But, coupled with evidence that Lt. Barrella may have also been involved in making allegedly false statements about Mr. Zasada's job performance, which in turn arguably contributed to Mr. Zasada's ultimate termination, the Court cannot say that Mr. Zasada's hostile environment claim is insufficient as a matter of law. *See Herrera*, 474 F.3d at 680 (severity and pervasiveness are quintessentially questions of fact). Accordingly, summary judgment on that basis is inappropriate.

12

The Court now turns to whether the City can be held liable for Lt. Barrella's conduct by failing to intervene and stop the offensive conduct. Here, it is undisputed that the alleged harasser, Lt. Barrella, was not an employee of the City. However, the Tenth Circuit has held that because the employer ultimately controls the conditions of the work environment, an employer "who condones or tolerates the creation of a [hostile work] environment should be held liable." *Lockard v. Pizza Hut*, 162 F.3d 1062, 1073-74 (10th Cir. 1998). Under such circumstances, the Court applies a negligence analysis, asking whether the employer failed to remedy or prevent a hostile work environment of which management-level employees knew, or in the exercise of reasonable case, should have known. *Turnbull*, 255 F.3d at 1244. "The focus is not on the conduct itself but on the employer's behavior in response." *Id.*

The negligence analysis consists of two separate inquiries. First, the Court considers whether the employer had actual or constructive knowledge of the harassment. The second inquiry is into the adequacy of the employer's remedial and preventative responses. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998). A plaintiff may prove actual knowledge based on his reports of harassment to management-level employees, or constructive knowledge based on the pervasiveness of the hostility in the working environment.

Here, the parties agree that in September 2010, Mr. Zasada complained to Sgt. Martin, his direct supervisor, about Lt. Barrella's offensive conduct to Sgt. Martin, his direct supervisor at the City. A reasonable jury could therefore conclude that as of September 2010, the City had actual knowledge of the alleged harassment.

Thus, the final question becomes whether the City responded appropriately after it became aware of Lt. Barrella's offensive conduct. There is no bright-line rule for measuring the "appropriateness" of an employer's response. Instead, the question is whether the response was

reasonable under the circumstances.  *Turnbull*, 255 F.3d at 1244-45.  Key factors include the promptness and effectiveness of any action.  However, it is not always possible for an employer to completely eliminate offensive behavior, and thus the effectiveness inquiry looks not to whether the offensive behavior actually ceased, but to whether the "remedial and preventative action was reasonably calculated to end the harassment."  *Id.*

The City contends that Mr. Zasada cannot establish that it acted inappropriately in response to his complaints about Lt. Barrella.  The record shows that when Mr. Zasada complained about Lt. Barrella in September 2010, Sgt. Martin told him that such behavior would not be tolerated.  Sgt. Martin suggested that Mr. Zasada confront Lt. Barrella on his own and ask him to stop.  Mr. Zasada states that he confronted Lt. Barrella, but the conduct did not stop.  Later, Sgt. Martin asked him if the conduct had stopped, and Mr. Zasada told him it had not.  Mr. Zasada states that he suggested that Sgt. Martin and Chief Vandermee meet with Lt. Barrella to resolve the issue.  However, Sgt. Martin never contacted Lt. Barrella in response to Mr. Zasada's complaints nor did he investigate the complaints.

Viewing the evidence in the light most favorable to Mr. Zasada, the Court finds it is sufficient to create a genuine dispute of fact as to whether the City acted reasonably in response to Mr. Zasada's complaints.  Based on the evidence, a reasonable jury could infer that Sgt. Marin should have taken additional actions in an attempt to stop the offensive conduct, such as conducting an investigation, contacting Lt. Barrella's home agency, or contacting Lt. Barrella himself.  Because Mr. Zasada has come forth with sufficient evidence on which he could establish his claim, summary judgment is inappropriate.

### 3. Retaliation

Mr. Zasada alleges that the City retaliated against him for complaining about Lt. Barrella's behavior when it removed him from the SMDTF, investigated him, and terminated his employment.

Title VII prohibits retaliation against individuals who oppose discriminatory employment practices or participate in complaints or investigations of employment practices prohibited by Title VII. *See* 42 U.S.C. § 2000e-3(a). When a plaintiff is unable to directly establish that retaliation played a motivating part in the employment decision at issue, he may rely on the familiar *McDonnell-Douglas* burden-shifting framework. *Fye v. Oklahoma Corp. Com'n*, 516 F.3d 1217, 1227 (10th Cir. 2008). Under the framework, Mr. Zasada must first present a *prima facie* case of retaliation by showing (1) he engaged in protected opposition to Title VII discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011). If Mr. Zasada establishes a *prima facie* case, the burden shifts to the City to proffer a legitimate, non-retaliatory reason for its decision. Once the City has satisfied this burden, Mr. Zasada must show that the City's reason is merely pretext for retaliation. *Id.*

The City moves for summary judgment on this claim, arguing that Mr. Zasada cannot demonstrate a causal connection between the adverse actions and his complaints about Lt. Barrella, nor can he prove that the City's proffered reasons for its actions are pretext for retaliation.

A causal connection may be shown by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."

*O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001).  Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation.  *Id.*  The Tenth Circuit has held that a one and one-half month period between the activity and the adverse action may, by itself, establish causation.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).  In contrast, a three-month period, standing alone, has been held to be insufficient to establish causation.  *Id.*

Here, the evidence show that Mr. Zasada first complained to Sgt. Martin about Lt. Barrella sometime in September 2010.  He was removed from the task force and told he was being investigated on November 29, 2010.  The record also shows that on February 14, 2011, Mr. Zasada complained to Chief Vandermee about someone "harassing" him because he was Polish.  (Mr. Zasada did not disclose to Chief Vandermee who the harasser was until a week later.)  Shortly thereafter, on March 4, 2011, Mr. Zasada was terminated.  Although somewhat thin, the Court finds that the evidence of a causal connection is sufficient to survive a motion for summary judgment.

Thus, the Court turns to the issue of pretext.  The City proffers that it removed Mr. Zasada from the task force, investigated him, and terminated him because of repeated instances of misconduct.  Because the City has articulated a legitimate, non-retaliatory reason for its actions, the burden shifts back to Mr. Zasada to demonstrate that the City's reason is pretext, and that his complaints about Lt. Barrella were the real reasons for the City's actions.

As noted in the discussion above, to show pretext, Mr. Zasada must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the City's proffered legitimate reasons for its action, that a reasonable fact finder could rationally

find them to be untrue and therefore infer that the City did not act for the asserted nonretaliatory reasons.  *See Proctor v. United Parcel Service*, 502 F.3d 1200, 1209 (10th Cir. 2007).  The relevant question is whether Mr. Zasada was treated differently because of his complaints about Lt. Barrella.  The Court is mindful that the issue is not whether the employer's proffered reasons were wise, fair, or correct, but whether the employer honestly believed those reasons and acted in good faith on those beliefs.  *Id.* at 1211.

Mr. Zasada relies on his evidence of temporal proximity between his complaints and the adverse actions to establish pretext for a retaliatory motive.  However, the Court finds that that evidence is insufficient to establish that the City's proffered reasons are unworthy of belief.  The parties agree that Chief Vandermee was the final decisionmaker with regard to the adverse actions.  The record shows that by the time Chief Vandermee was made aware of Lt. Barrella's behavior, in February 2010, the internal investigation was complete and he had reviewed Sgt. Martin's report.  There is simply nothing in the record to establish that Chief Vandermee did not rely in good faith on the information provided to him by Sgt. Martin when making his employment decisions with respect to Mr. Zasada, or that he would have treated Mr. Zasada any differently had he not complained about Lt. Barrella.

Mr. Zasada also asserts a "rubber stamp" theory, arguing that it was actually Sgt. Martin who harbored bias against him because of his complaints.  However, Mr. Zasada has failed to come forward with sufficient evidence to establish a genuine dispute of fact as to whether Sgt. Martin was biased against him because of his complaints.  The record shows that when Mr. Zasada complained to him, Sgt. Martin told Mr. Zasada that such conduct would not be tolerated and advised him how to handle the situation in accordance with the City's harassment policy. Although there is a question of whether Sgt. Martin should have done more in an attempt to stop

the conduct, there is nothing to show that any failure to do was motivated by resentment toward

Mr. Zasada for reporting the conduct.  Accordingly, the Court finds that Mr. Zasada has failed to

come forward with sufficient evidence to establish his claim of retaliation, and the City is

entitled to summary judgment in its favor on this claim.

### 4.  § 1983 Equal Protection

Mr. Zasada asserts under 42 U.S.C. §1983 that the City violated his constitutional right to

equal protection under the Fourteenth Amendment by discriminating against him because of his

Polish origin.

Section 1983 creates no substantive rights, but rather creates a remedy against those who,

acting under color of state law, violate rights secured by federal statutory or constitutional law.

42 U.S.C. § 1983.  The Equal Protection Clause of the Fourteenth Amendment mandates that no

state "deny any person within its jurisdiction the equal protection of the laws."  U.S. Const.

amend. XIV.  National origin discrimination can violate the Fourteenth Amendment right to

equal protection of the law and state a cause of action under § 1983.  *Ramirez v. Dep't of*

*Corrections*, 222 F.3d 1238, 1243 (10th Cir. 2000).

Mr. Zasada relies on the same factual circumstances to support his § 1983 claim against

the City as he did to assert claims under Title VII.  Specifically, he argues that the City

discriminated against him when it removed him from the task force, investigated him, terminated

him, and failed to correct a hostile work environment.  In disparate treatment discrimination

suits, the applicable analytical framework of a plaintiff's case is the same whether brought under

§ 1983 or Title VII.  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991).  Thus,

the Court's analysis in sections IV.A.1 and 2 applies with equal force here, and summary

judgment on Mr. Zasada's § 1983 claim for discrimination is inappropriate.

However, Mr. Zasada also appears to present an additional claim against the City under § 1983 for a failure to train its employees. He alleges that he was denied his right to equal protection because the City failed to train its employees on discrimination and harassment.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 179 S.Ct. 1350, 1359 (2011). To establish such a claim, a plaintiff must demonstrate that the municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* Only then can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

"Deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. When a city policymaker is on actual or constructive notice that a particular omission in their training program causes a violation of constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain the program. *Id.* at 1360. The city's "policy of inaction" in light of notice that its program causes constitutional violations, is the "fundamental equivalent of a decision by the city itself to violate the Constitution." *Id.*

Mr. Zasada argues that Sgt. Martin's and Chief Vandermee's failure to take additional action to resolve his complaints about Lt. Barrella demonstrates a failure to train. The record shows, however, that the City had policies on harassment and discrimination, and that both Sgt. Martin and Chief Vandermee were trained on those policies. Thus, their actions cannot be attributed to a complete lack of training. Assuming that the training was inadequate to prevent Mr. Zasada's constitutional rights from being violated, there is no evidence to demonstrate that, prior to this case, the City or any of its policymakers were aware that an omission in its training

could potentially cause a constitutional violation.  Even if the City had been aware of such omission, there is nothing to demonstrate that it deliberately retained the program in spite of any possibility that its employees would commit constitutional violations.  Accordingly, the Court finds that Mr. Zasada has failed to come forward with sufficient evidence to establish his § 1983 claim for failure to train, and the City is entitled to judgment in its favor on that claim.

### B.  Claims against Individuals

Finally, Mr. Zasada asserts claims under § 1983 against Chief Vandermee, Sgt. Martin, and Lt. Barrella for violation of his right to equal protection under the Fourteenth Amendment. He alleges that the Defendants discriminated against him because of his national origin.

To establish a § 1983 equal protection claim against the individual Defendants, Mr. Zasada must prove that he was "intentionally treated differently from others similarly situated," and that there was no "rational basis" for doing so.  *SECSYS, LLC v. Vigil*, 666 F.3d 678, 689 (10th Cir. 2012).  For liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established.  *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).

### 1.  Defendants Chief Vandermee and Sgt. Martin

Mr. Zasada argues that Chief Vandermee and Sgt. Martin discriminated against him by removing him from the SMDTF, targeting him for an investigation, terminating him from employment, and allowing him to be harassed by Lt. Barrella.

Chief Vandermee and Sgt. Martin raise qualified immunity as a defense.  If a section 1983 claim is brought against a state or municipal employee in their individual capacity, the employee may be shielded from liability by the doctrine of qualified immunity.  *See Johnson v. Frankell*, 520 U.S. 911, 914 (1997).  The doctrine protects government officials who perform

discretionary functions from liability for civil damages, provided that their conduct does not violate clearly established rights of which a reasonable government official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to meet a two-part test. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009). A plaintiff must show that he had a constitutional right that was infringed, and that such right was clearly established at the time of the alleged infringement. Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

The Court turns first to whether Mr. Zasada has established that Chief Vandermee and Sgt. Martin violated his constitutional right to equal protection.

*a. Chief Vandermee*

Mr. Zasada asserts a "rubber stamp" theory of liability against Chief Vandermee, arguing that he should be held liable for relying on the "biased recommendations" of Sgt. Martin and Lt. Barrella. However, although there is precedent in other circuits for imposing individual liability on the unlawfully motivated *subordinate* under § 1983, *see Smith v. Bray*, 681 F.3d 888, 898-89 (7th Cir. 2012) (collecting cases), Mr. Zasada has not cited any authority, and the Court has found none, by which the "duped" decision maker could be held individually liable for the improper motives of his subordinate simply for the reason that he relied on the subordinate.

Otherwise, there is nothing in the record to establish that Chief Vandermee treated Mr. Zasada differently because he was Polish. Mr. Zasada argues that other non-Polish, similarly-situated officers who committed misconduct were not removed from the task force or fired, and

that he was the only person terminated during Chief Vandermee's tenure.  However, Mr. Zasada has failed to establish that the other officers were truly similarly-situated in that they committed violations of comparable seriousness, dealt with the same supervisor, were subject to the same standard, and had similar work histories.  *See Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005).  Mr. Zasada argues that Chief Vandermee should have investigated further when he complained to him about Lt. Barrella.  But whether Chief Vandermee *should have* investigated further is irrelevant.  Mr. Zasada has not come forth with any evidence to establish that Chief Vandermee's actions, or inactions, with regard to him were because he was Polish.  Accordingly, the Court finds that Mr. Zasada has failed to establish that Chief Vandermee deprived him of his constitutional right to equal protection.  Chief Vandermee is therefore entitled to qualified immunity, and summary judgment in his favor, on the § 1983 claim against him.

  *b. Sgt. Martin*

  Mr. Zasada alleges that Sgt. Martin discriminated against him by acquiescing to the harassing conduct of Lt. Barrella.

  To hold a supervisory employee liable in his individual capacity for harassment conducted by a third party, the plaintiff must show "deliberate indifference to known . . . harassment."  *Murrell v. Sch. Dist. No 1*, 186 F.3d 1238, 1250 (10th Cir. 1999).  Liability under § 1983 must be predicated upon a "deliberate" deprivation of constitutional rights by the defendant and not upon mere negligence.  *Id.*  To show that that the conduct was "deliberate," a plaintiff must show that the defendant actually knew of and acquiesced in the third-party's behavior.  *Id.*[3]

---

[3] The Court notes that *Murrell* involved a case of sexual harassment by a third-party.  However, it sees no reason not apply the standards set forth in *Murrell* to a case of harassment based on national origin.

Mr. Zasada has presented evidence showing that he complained to Sgt. Martin about Lt. Barrella's conduct. Later, when he told Sgt. Martin that the conduct had not stopped, Sgt. Martin failed to take any further action. Viewing the evidence in the light most favorable to Mr. Zasada, the Court finds that a reasonable jury could conclude that Sgt. Martin's failure to take additional action in response to Mr. Zasada's complaints was deliberate, rather than negligent. Because Mr. Zasada has established that there are disputed issues with regard to whether Sgt. Martin deprived him of a constitutional right, summary judgment on this claim is inappropriate.

2. Defendant Lt. Tommy Barrella

Mr. Zasada alleges that Lt. Barrella discriminated against him by harassing him because he is Polish. The Court finds that there are disputed issues of fact with regard to this claim. It is undisputed that Lt. Barrella used the term "Polack" in front of Mr. Zasada on at least one occasion. At discussed in section IV.A.2, the Court finds that there are disputed issues with regard to whether Lt. Barrella's conduct actually created a hostile work environment. *Cf. Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989) (holding that sexual harassment is actionable under the Equal Protection Clause). Accordingly, the Court finds that summary judgment on the § 1983 claim against Lt. Barrella is inappropriate.

**V. Motions to Restrict Access**

Also pending before the Court are four motions (**#106, 114, 116, 120**) to restrict public access to certain filings under D.C.Colo. L Civ. R. 7.2. Documents filed with the Court are presumptively available to the public, and the burden is on the party seeking restriction to justify such relief. D.C.Colo. L. Civ. R. 7.2(A). A showing of compelling reasons for restriction of public access is necessary, as it is critical that the public be able to review the factual basis of this Court's decisions and evaluate the Court's rationale so that it may be confident that the Court is

23

functioning as a neutral arbiter. *Cf. United States v. McVeigh*, 119 F.3d 806, 814 (10th Cir. 1997). A party seeking to restrict access must make a multi-part showing. It must (1) identify the specific document for which restriction is sought, (2) identify the interest to be protected and the reasons why that interest outweighs the presumption of public access, (3) identify a clear injury that would result if access is not restricted, and (4) explain why alternatives to restricted access, such as redaction, summarization, stipulation, or partial restriction, are not adequate. Local Rule 7.2(B)(1)-(4).

In accordance with the above principles, the Court rules as follows:

- **Docket #106** – Mr. Zasada seeks to restrict access to Exhibits 5, 8, 10, 11, and 12 attached to his response to Defendant Barrella's summary judgment motion. The motion is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to Exhibits 10, 11, and 12, which come from personnel files of City employees who are not parties to this action and are subject to a protective order in this case. The motion is also granted as to Exhibit 5, which comes from the Standard Operating Procedure Manual of the SMDTF, due to the undercover nature of the work performed by the SMDTF and the need to protect the integrity of that undercover work. The motion is DENIED with respect to Exhibit 8, which comes from Mr. Zasada's personnel file. By initiating this action, Mr. Zasada has put at issue the information contained in his personnel file and therefore his desire for privacy does not outweigh presumption of public access.

- **Docket #114** – Lt. Barrella seeks to restrict access to Exhibit 3 attached to his reply in support of his motion for summary judgment. The motion is **DENIED** in that Exhibit 3 comes from Mr. Zasada's personnel file and is at issue in this case.

- **Docket #116** – Mr. Zasada seeks to restrict access to Exhibits 4, 7, 12, and 14 through 21, attached to his response to the City's motion for summary judgment.  The motion is **GRANTED IN PART AND DENIED IN PART**.  The motion is granted with respect to Exhibits 12, 14, 18, 19, 20, and 21, which come from personnel files of City employees who are not parties to this action, and with respect to Exhibit 4, which consists of additional pages to the Standard Operating Procedure Manual of the SMDTF.  The motion is denied with respect to Exhibit 7, which consists of one page of the Englewood Police Department's operations manual, and with respect to Exhibits 15, 16, and 17, which come from Mr. Zasada's personnel file and are at issue in this case.  As to the operations manual, Mr. Zasada has not identified what injury would result if access is permitted.

- **Docket #120** – Mr. Zasada seeks to restrict access 3, 6, 12, 14, 15, and 16 attached to his response to the South Metro Drug Task Force's motion for summary judgment.  The motion is **GRANTED IN PART AND DENIED IN PART**.  The motion is granted with respect to Exhibits 14, 15, and 16, which come from personnel files of individuals who are not parties to this action, and as to Exhibit 6, which is the Standard Operating Procedure Manual of the SMDTF.  The motion is denied with respect to Exhibit 3, consisting of one page of the Englewood Police Department's operations manual, for the same reasons stated above, and as to Exhibit 12, which comes from Mr. Zasada's personnel file.

## VI.  Conclusion

For the forgoing reasons, the Defendant Lt. Barrella's Motion for Summary Judgment **(#102)** is **DENIED**.  The Defendants City of Englewood, Sgt. Martin, and Chief Vandermee's

Motion for Summary Judgment **(#104)** is **GRANTED IN PART AND DENIED IN PART**. The motion is DENIED as to Mr. Zasada's claims under Title VII for national origin discrimination and hostile work environment, as to his discrimination claim under § 1983 against the City, and as to his § 1983 claim against Sgt. Martin.  The motion is GRANTED in all other respects.  The South Metro Drug Task Force's Motion for Summary Judgment **(#103)** is **DENIED AS MOOT**.

The parties' Motions to Restrict Document **(#114)** is **DENIED**, and **(#106, 116, 120)** are **GRANTED IN PART AND DENIED IN PART**, as set forth herein.  The Clerk of the Court shall remove all restrictions to public access as to Exhibit 8 in support of #105 (filed as attachment #1 to Docket#107); Exhibits 7, 15, 16, and 17 in support of #115 (filed as attachments #1, 4, 5, and 6 to Docket #117); and Exhibits 3 and 12 in support of #119 (filed as main document and attachment #2 at Docket #121).  The Court notes that Exhibit 3 in support of #113 was filed without restriction, and shall remain unrestricted.

The parties shall begin preparation of a Proposed Pretrial Order pursuant to the previously-issued Trial Preparation Order (#32) and shall jointly contact chambers to promptly schedule a Pretrial Conference.

Dated this 30th day of September, 2013.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge